The next case is a related subject matter. Team Worldwide v. Intex Recreation, 2020, 1147. Mr. Hawkins, when you're ready. Thank you, Your Honor. I'm claiming to reserve five minutes for rebuttal. The 950 patent that is at issue in this appeal, there were findings of anticipation by the Board based on two references. One is Perrienti and the other is Chafee. And we've already talked about this in part, but basically our position is that neither of these anticipates and therefore the case needs to be at a minimum remanded for further consideration of the PTAB. So I'd like to start with Perrienti, actually. There is, as Your Honor's noted, sort of a contradiction in the Board's findings, at least regarding the 950 patent and what we just talked about with the 394 patent. In the 394 patent, the Board properly found that there is no housing for the pump built into the air mattress. And the reason is because in Perrienti, Perrienti is a foldable mattress with a solar-powered powering device, also called an auxiliary unit, that kind of sits on top of one of the fold-out panels and allows air to go a variety of places, at least two different places. One is into the bed and the other is down some tube into a porous kind of a cooler where you can keep that to cool off. And you can actually, another embodiment is you detach that powering unit and you just use it with a cooler device for cooling items like a box that would hold sodas or something like that. It's to be used at the beach. So what was found in the 394 is correct and what was found here is not consistent with that as incorrect. The 394 patent, what they found was that there was no case made that the housing was incorporated into the bed. They said, okay, the only part that's in the bed is this pipe nine with a valve 19. And that's shown in figures four and seven, for example. No doubt, pipe nine with valve 19 is just like any other air mattress that does not have a built-in pump, you need a valve. You need something to hold the valve so that the air can go in and out of the bladder of the air bed. That's what Perianty did. You could have an air mattress with a flush opening to which a pipe screws in all exterior to the wall. It's not the same as... Perhaps, I'm not following exactly the physical mechanics of what your honor just said, but you could have other designs, but it is common in the industry to have some kind of ring or solid... There's no doubt that pipe nine sticks into the bladder, right? Right. And the only question is whether pipe nine is part of the pack or the housing. Correct. Yes. Thank you, your honor, for clarifying that. And the reason that the board in the 394 patent found that it wasn't part of the housing in the 394 patent and should have found that it's not part of the pack in the 950 patent is there's intervening structure. So there's this powering device, and if your honors look at figure four, for example, and figure seven, there is another pipe, 16, that sits underneath the powering device and leads into pipe nine, and it's not inside the bed. It's on top of and outside the bed. Nobody has ever made the argument that pipe 16 is built into the bed. And so the air has to go from powering device through a portion of pipe 16 and then into pipe nine. So that... Yes. These are fact findings, aren't they? And we owe the board substantial definition of facts. Well, your honor, it would be fact finding what opposed it might interpret the text to mean, but this is just the express disclosure of the actual patent itself. So, for example, as a matter of, for example, claim construction, does pipe nine have to be part of the... Is a container going to... Could that possibly, the definition of pack, could that include an item that's entirely external to the container and is on the other side of another pipe? We think that's a claim construction issue. We think container means one thing. It can't be something plus something on the other side of another pipe. So what happens here, and I just want to be clear about this, is not a fact finding issue. This is just express disclosure in the patent and claim construction, which is, is pipe nine part of a container or would it not be part of a container? That's the definition of this word pack. Pipe nine is never referred to as part of this powering device. And specifically, if there was only one section I could point to, if I was going to point to in this whole appeal on Perrienti, and it is the fact that it says that you don't ever have to have the error go from... What are you reading from? This is from the Perrienti patent 960, column three. It's going to be lines 23 to 25, the patent itself. What page of the appendix is that? I think it's 983, Your Honor. It said column three lines what? 23 to 25. And what it says is, in order to perform a cooler function, said air will not be blown into the mattress, but diverted to a pipe 16 that bypasses the pipe nine. Bypasses the pipe nine, meaning the air never gets into the mattress. It never goes to pipe nine. It is bypassed by going to pipe 16. So the air has to flow from the powering device through pipe 16 and maybe or maybe not ever into pipe nine. Pipe nine sits on the other side of pipe 16. There's no debate that pipe 16 is on top of the mattress, not part or in it. Therefore, the pack, which is on top, the powering unit, which is on top of pipe 16, can't be recessed into or built into this mattress. It's the therefore part that I'm not quite following. So what if 16 is... That means there's three parts. There's the pack, which is the solar panel fan unit. The fact that 16 is not part of the pack, why does that imply that nine is not part of the pack? Because 16 sits between the powering unit and pipe nine. If you look at the figure, for example, figure four in the patent, you go from the powering unit, then pipe 16 sits there, and then pipe nine is referred to as something that never has to receive air from the powering unit. It's on the other side of this other pipe. And so you can't... You wouldn't call that... And if it's not part of the pack, then this is reversible error to find that there's anticipation here The air may or may not go to pipe 16. It may or may not ever reach pipe nine. That's what the word bypass means. It means you don't have to go there. And so how does the air never reach pipe nine if it's part of the same container? There's no other valve structure or anything like that. The reason is because it goes out of the pack into pipe 16 and then possibly into pipe nine or possibly not into pipe nine, possibly into the bed, possibly not into the bed. It's a different structure. And Dr. Beeman, when he was asked about this, and this is appendix 3802 and 3805, he did not include pipe 16 as part of the pack. That's 3805. And he agreed that one option is air can be diverted to pipe 16. That bypasses pipe nine. And he agreed to that as 3802, at 3802 in the appendix. So the argument's fairly simple here. There's no disclosure of this pipe nine being part of the powering device. There's no disclosure of that. I mean, at a minimum, it would be too ambiguous for one of ordinary skill in the art to be able to ascertain that from this. But I actually think it definitively tells you it's not. There's another structure in between the powering device, which is the pack, and this pipe nine, which is the valve structure, the part that holds the valve that's inside the bed. And you can screw that in or you can attach to it. But pipe nine stays in the bed, but the powering unit may or may not. It can come off the bed. It can go used with a cooler. It can send air down a pipe 16 that sits in between the powering device and the pipe nine. And that's basically the reason the PTAB got it wrong and the reason why it basically found what I'm saying in the 394 case. It got it right there. It got it wrong here. Was the same issue involved in INTEX and came up to us in the 018 bed? In INTEX, the question at issue was whether—and I know Your Honors asked me this before. My recollection, standing here right now, is that the issue was, was this pump body, which nobody thought included pipe nine, nobody in the body, was that built into and recessed into the air bed? So this issue about pipe nine versus the powering device was not at issue in the 018 patent because the petitioner never even raised the possibility in that case that pipe nine would be considered part of the pump body. They agreed it wasn't. So that wasn't at issue in the 018 patent. Now— Is this an expired patent? It is an expired patent. And this litigation probably stayed in the district court? Correct. It's been—stayed for quite some time. Yes. Whether that litigation on this matter goes on or not will depend on if one day, you know, this is determined valid or invalid at the end of— And all three patents in front of us. Correct. That's correct, Your Honor. So the other one is Chafee. And I really—I'm in my rebuttal time, but I don't— you know, the argument about Chafee is exactly what I said, which is that there are two options in Chafee. And at Appendix 995 in the 950 patent, I would point you, Your Honors, to column five, lines 33 to 48. And those are the ones that create this basically option A, option B, where option A is that you have two parts of the fluid controller attached to each other reversibly, and you can take, like, slide the pump body that would be— into the cup. Or the other option that's— is that the bladder and fluid controller are reversibly connected, and the fluid controller is all the plastic. It's 90, it's 82, it's 83. It's the combination of whatever those plastic parts are. In the background of the art— or in the summary section, it talks about the idea of an indentation in the bladder, the idea that you would form the actual bladder plastic itself to have an indentation. And then this fluid controller would slide in and out of that. It doesn't have to be that plastic has to detach from other plastic. It actually—the whole thing can come out of the bed. And those are the two options. And it tells you, as I noted, that in either case that would— the reversible connection allows the removal of portions of fluid controller 80 for repair or replacement, preventing the entire inflatable device from having to be disposed of in the event of a failure of one component. Just to double-check, isn't the little flap 82 on the inside of the bladder wall? No, Your Honor. Okay. It would be—it would be— usually that would be— there would be a hole cut in the bladder wall, and you could glue 82 on to the plastic. And 83, the cup, would then go into that hole. That is one possibility. But the other possibility is you have an indentation in the bladder itself, and you have 82, which is a flange, come off of or extend from 90, and then the whole thing just pushes in. But it creates a seal when you push it in so that the air doesn't backflow. But that would be a situation when there's this extended front situation in which the whole plastic piece still can come out of the airbed. It just means that the lip is part of the housing instead of being part of the bladder, instead of being incorporated into the bladder in some way. So I'll save my last two minutes for Bo. Thank you. We're going to go back to Mr. Carter. Thank you, Your Honor. Trevor Carter on behalf of Intex.  If you have any questions, please let me know. So on the issue of the pack in the 950 patent and TWW's attempt to analogize that to the housing, we believe that one thing that is very clear about the pack in the 950 patent is looking at the figure 4 embodiment. There's no dispute that in the 950 patent, the figure 4 embodiment is a pack. TWW agrees to that in its briefing and it's referred to as a pack in the 950 patent. That pack in the 950 patent, and I'm turning to... I'm sorry. You said, I don't know quite what it means to say figure 4 is a pack. Everybody agrees that there is a pack in figure 4, but there's a dispute about how much what's in figure 4 is in the pack. Correct. Or what is included in the pack in figure 4. And whether it's built in. Yes, correct. In figure 4B, which is appendix 274, you see the pack, and I'll point to the text language in a second, but 4302 that you see coming out the back of figure 4B, that pipe is identified as being part of the pack. When you look at figure 4C, which is a cross section, you see the pipe. What are you reading from now? I'm looking at Perrienti. It's appendix 275. I'm looking at Perrienti, but there's no figure 4B that I'm seeing. I'm sorry. I misspoke. I'm looking at the 950 patent. Okay. I'm sorry. So in the 950 patent, the figure 4 embodiment, there's no dispute that it shows a pack. And in figure 4B of the 950 patent, which is appendix 274, 4302, which is part of the pack, is a pipe element. So there's no dispute that in the 950 patent, it included a pipe that extends out as part of the pack. In figure 4C of the 950 patent is a cross section, but what you see in figure 4B, this is at appendix 275, and there you can see there are two pipes, 4302 and 4302 prime. One of those provides air to the mattress, and the other one provides air to a backrest. So those can be bypassed. So similar to this issue of pipe 16 and a bypass, you have two pipes that are separate structures. You can tell by the cross hatching that are clearly identified in the patent as being part of the pack. If I understand what opposing counsel is saying, looking at figure 7 of Parenti, the valve 16 is intervening structure before you reach 9, and therefore 9 can't be part of the pack, I guess is the argument. Is that what you understand them to be saying? That's what I understand the argument to be, yes. So when you look at figures for... So they say how can 9 be part of the pack if 16 isn't? Our first response to that is that pipe 16 relates to an unclaimed feature. Pipe 16 is sending air to a cooler, and that isn't part of what is claimed here, and this is a comprising claim. We aren't relying on pipe 16 in any way for these claims. For the issue of is pipe 9 part of the powering device, because I recall Mr. Harkin saying that pipe 9 is not part of the powering device. So if you look at figures 4 and 5 together in Parenti at Appendix 980, and if you go to Appendix 982 in the brief description of the drawings, it says figure 5 is a plan view of a device for inflation-deflation of the solar-powered mattress of the present invention. Figure 4 is a cross-section of the device shown in figure 5. So for this device for inflation-deflation, that is what you have in figure 5, and you see a cross-section of that in figure 4. So that is part of the device that is used for inflating and deflating. There are no line breaks in figure 4 when you look at where pipe 9 is and how it is that that is connected to the rest of the pack. There's nothing indicating that that is separate structure or different in any way. And even if it was separate structure, as we looked at with pipes 4302 and 4302' in the 950 patent, figure 4c, those were actually separate structures. Here, pipe 9 is, as you see in figure 4, integral with the rest of the pack. Now, as far as this argument about pipe 16 being situated in between, when you look at figure 4, you can see where the lead line for 9 goes to. And 16 tees into pipe 9. So I understand the language that Mr. Harkins read, that when you use this cooler function and you bypass pipe 9 so that air can go into 16, it's referring to the fact that you don't have air going all the way through pipe 9 into the mattress. That is, that that valve... Not bypassing it entirely, but bypassing the entirety of it. Correct. To the other end. Correct. And you have in the 950 this language of pack in column 5 as including the 4302 and 4302' little pipe outputs, right? Yes. So how does this translate or not translate to the patent that we were just talking about, about the housing? So for the housing... Is housing discussed in 950? Housing is discussed in the 950 briefing in particular. No, in the 950 patent. Oh, in the 950 patent. Well, the 950 patent shares the exact same specification as the 394 patent. So yes, it does. Okay. And there are... And what, if anything, do we learn about whether there's a distinction between the housing and the pack in the common spec? So we believe, as we have set out in the 394 briefing, that the pipe 9 of Perrieni is also part of the housing. What you have for the pack is you have a clear disclosure in the figure 4 embodiment of the 950 patent that those pipes 4302 and 4302' are part of the pack. We do not have something that direct on point for a housing that is a disclosed embodiment in the common specification of the 394 and the 950 patent. We believe that if you take TWW's logic and apply it, that pack and housing are the same, TWW can't escape that the pack includes those pipes 4302 and 4302' that extend out from the rest of the pack. So if they want to say that pack and housing are the same thing, that's further evidence in support of our appeal on the 394 patent that pipe 9 is part of the housing. Kind of on the theory that maybe it's less clear as the housing, but if housing is equal to pack, it's really clear for pack and therefore... Correct. Okay. Thank you. Alright, if there aren't any other questions on Perrini, I wanted to briefly turn to the Chaffee reference. As I did for the 394 patent of noting appendix pages that at least provide an indication of where the PTAB provided a thorough analysis of this issue of looking at columns 4 and column 5 of Chaffee and where it is that the pump is built in. For the 950 final written decision, you can look at appendix pages 65 to 68. And then once again, for the record in this case, I will once again note the language in claim 1 of the Chaffee patent that the fluid controller was permanently coupled. I just have one other point to make and that is, Judge Toronto, you asked a question in Chaffee, isn't flange 82 on the inside of the bladder? And I believe Mr. Harkin said that it was not, but that is incorrect. If you look at appendix page 900, which shows figure 5, flange 82 is very clearly on the inside of the bladder. I'm sorry, Chaffee where? There are several different versions and I'm not going to keep switching back and forth. I understand. So I can give you the 394 site if that helps you.  Oh yeah, in Chaffee. So appendix page 900 is figure 5. Figure 5 of Chaffee, that will do it for me. And then you can clearly see that the flange 82 is on the inside of the bladder, which was your question. Okay. Unless the court has any other questions. Thank you, counsel. Thank you. Mr. Harkin, does someone want to comment? Thank you, your honor. It does look like I stand corrected as to figure 5. It does look like 82 is sitting inside the air wall. Apologies for that. It may not be obvious how exactly. I don't know. So I'm going to discuss a couple of things. Let's start with Chaffee and then head back to Perrienti. So for Chaffee, so this concept, there's two concepts. One is this concept of figure 4 CEUB in the actual 950 patent. In that, the idea of bypassing is just you go through one entire part of a pump or not. There is no intervening structure question. So Judge Dyke, that's exactly the point. It's not just the word bypass. It's that the way you bypass it is you go through the intervening structure and never reach pipe 9. And so if there were two entirely different paths into the bed, it might be a different situation. What do you make of what I took to be the point, which is that when you look at the figures, I guess this is 4B in the 950, and the accompanying text, which is I guess Common 5 lines 14 to 17. It says the pack includes the two air outlets, which look identical to pipe number 9 in Perrienti. So I agree with you that the first part of the statement, and I would respectfully disagree with the second. They don't look exactly in Perrienti like they do. In figures 4C, the number 4302 and 4302 prime are completely incorporated. There's no question about it. The way that the entire housing is built is that those valves are part of the overall structure that come out of that entire unit, 43, that's shown. There is no ambiguity. There's no showing of an air bed where there's a pipe that you can go to or not with some sort of structure in between the housing 430 and the outlet. Really kind of everything in your argument depends on what to infer from the existence of 16 in Perrienti. Yes, it does, because even Dr. Beeman, the expert for the other side, agreed you wouldn't have an open pipe 16 attached to the powering unit and pipe 9 all be one thing. That would be impracticable. There's no way that you would have this entire structure that sits on top of the bed being permanently adhered, on top of which this is a beach mattress you're trying to unfold and use, and you'd have to drag this around with you, this whole external pipe structure as part of the whole thing. Nobody has argued that. The board certainly didn't find that. And so if this is an intervening structure, then it's not part of the pack. Is what's shown in figure 4 part of the pack? Part of what's shown in figure 4 is part of the pack. The part that's got 8, 2, and 4 in it, but certainly not 16, 9, and 19. And Dr. Beeman said he doesn't consider the structure that includes 16 to be part of the pack. And I think I cited the evidence of that in my opening. I guess what figure 4 shows doesn't seem to show 16 as intervening structure. Well, it's discussed as intervening structure. That's why I read the express disclosure in the text that goes along with the figure to help clarify that. You cannot enter pipe 9. You can bypass it and go through only pipe 16. And the last thing I'd like to say before I go is I did mention on Chafee this idea that they talk about, just very quickly, two points. The fluid controller being permanently coupled in a claim, the claim came later in time. It is not entitled to the earlier disclosure date. But also, I already told you one of the disclosures is you can have part of the fluid controller that's in the bed and the other part that intersects with it. Or my second point is I told you that there was a way to do this where the whole thing comes out of the bed. And I just also want to cite column 2, lines 15 to 18, where it says recess is defined as an indentation. For example, a recess in a bladder may comprise an indentation in the wall of the bladder. Thank you.